UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                                                                                                                        No.  04-CR-706-LTS

RAYMOND NASSIMI, a/k/a "Rimond
Nassimi,"

    Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

        Nearly two decades ago, on July 22, 2004, a federal grand jury returned the above-captioned Indictment against Defendant Raymond Nassimi, a Venezuelan national, charging him with one count of conspiracy to commit money laundering in violation of 18 U.S.C. sections 1956 and 1957.  Upon the Government's application, a United States Magistrate Judge sealed the Indictment on the same day.  By then, Mr. Nassimi, who had briefly traveled to the United States in 2003, was in Venezuela, where he has remained since and from where he cannot be extradited.  On June 28, 2012, almost eight years after the Indictment was returned, the Government moved to unseal the Indictment in connection with outreach by Mr. Nassimi regarding possible surrender.  Now, after another eleven years, Mr. Nassimi, who has neither surrendered nor returned to the United States, moves to dismiss the Indictment.  Mr. Nassimi argues, first, that the Government ran afoul of the statute of limitations by improperly sealing the Indictment and by improperly maintaining it under seal, and second, that the Government has violated his constitutional right to a speedy trial.  Mr. Nassimi also requests a hearing and discovery concerning the Government's sealing justifications and efforts to prosecute this case.  The Government opposes all relief.

The Court has reviewed carefully the parties' submissions[1] in connection with Mr. Nassimi's motion and, for the following reasons, denies the motion in its entirety.

### BACKGROUND

Given the lack of activity in this case, there are few relevant facts. On July 22, 2004, the Grand Jury returned an indictment charging Mr. Nassimi with one count of conspiracy to commit money laundering in violation of 18 U.S.C. sections 1956 and 1957. (See docket entry no. 1 ("Indictment").) The Indictment alleges that, from Fall 2001 to about May 2003, Mr. Nassimi and co-conspirators helped launder drug-trafficking proceeds through a jewelry business that Mr. Nassimi operated in Manhattan's Diamond District. (See id. ¶ 3.) From Venezuela, Mr. Nassimi directed a co-conspirator to accept hundreds of thousands of dollars of narcotics proceeds; the money was then exchanged for third-party checks at several businesses in the Diamond District with which Mr. Nassimi had relationships. (See id. ¶ 9(a).) He allegedly received a six percent fee from the traffickers for his services. (See id. ¶ 9(d).) The Government represents that law enforcement has confirmed that, between August 1993 and April 2001, Mr. Nassimi had visited the United States fourteen times. (See docket entry no. 6 ("Gov't Opp.") at 15 n.4.)

Mr. Nassimi had returned to Venezuela before he was indicted, and the Indictment was filed under seal. In his motion papers, Mr. Nassimi references a 2003 trip to the United States, after which he returned to Venezuela and never left. (See docket entry no. 4 ("MTD") at 5.) His choice to remain in that country is significant because, as the Government

---

[1] The relevant submissions consist of Mr. Nassimi's notice of motion and memorandum of law, and the Government's memorandum and exhibits in opposition. (See docket entry nos. 4 and 6.) Mr. Nassimi made no reply submission.

points out, Venezuelan nationals like Mr. Nassimi enjoy the right to be free from extradition. (See Art. 69, Constitution of the Bolivarian Republic of Venezuela (1999)).  Confronted with the roadblock of Venezuela's extradition prohibition, the Government hoped that Mr. Nassimi, unaware of the sealed Indictment, would travel back to the United States or visit some other country where he could be arrested.  On the same day the Indictment was filed under seal, law enforcement authorities entered a warrant for Mr. Nassimi's arrest into the National Crime Information Center ("NCIC") wanted persons database, which ensures that a law enforcement authority seeking the person in question receives notification if other law enforcement authorities encounter that person.  (See Gov't Opp. at 2-3 n.2.)  Some months later, in September 2004, Mr. Nassimi was officially declared a fugitive, and the United States Marshals Service assumed authority to apprehend him.  (See id. at 3.)  Law enforcement agencies and the Internal Revenue Service have since performed periodic checks of government and proprietary databases for information concerning Mr. Nassimi.  (See id. at 7.)

       Mr. Nassimi neither returned to the United States nor made any overtures to the Government until 2012.  Some eight years later after the sealed Indictment was filed, in February 2012, a lawyer for Mr. Nassimi contacted the Government, indicating that his client believed that United States law enforcement authorities might be looking for him.  (See id. Ex. A at 2.)  A March 30, 2012, email exchange between Government lawyers indicates that they were preparing to "arrange a surrender with [Mr. Nassimi's] lawyer." (See id. Ex. B at 2.)  To facilitate that process and in light of Mr. Nassimi's apparent awareness of the charges, the Government moved to unseal the Indictment and, on June 28, 2012, Magistrate Judge James C. Francis issued the unsealing order.  (See docket entry no. 2.)  Mr. Nassimi did not, however, surrender.  A similar cycle of surrender-related communications began in early 2014, this time

initiated by new counsel for Mr. Nassimi. At counsel's request, the Government attempted to arrange a meeting at which counsel would be present, along with a representative from the Drug Enforcement Administration ("DEA"). (See Gov't Opp. Ex. D at 2.) That meeting did not occur. Another attempt to arrange Mr. Nassimi's surrender, involving a third defense counsel, occurred sometime in April 2018, and was likewise unsuccessful. (See id. at 4, Ex. E at 2-3.) The Government and Mr. Nassimi's current (fourth) defense counsel discussed yet another possibility of surrender last year. The talks advanced to the point that the Government conferred with the DEA about collecting Mr. Nassimi from neighboring Colombia during last week of September 2022, and proposed the plan to defense counsel. (See id. Ex. E at 2-3, Ex. F at 2-3.) No surrender occurred.

Mr. Nassimi instead moved in December 2022 to dismiss the Indictment based on two grounds. First, he contends that the statute of limitations for the charged offense has expired, because the Government's sealing and maintenance of the Indictment were improper and thus did not toll the running of the applicable statute of limitations. Second, he argues that the Government's 17-and-a-half-year delay in bringing Mr. Nassimi to trial on the charges has violated his constitutional right to a speedy trial under the Sixth Amendment.

DISCUSSION

Statute of Limitations

A money laundering offense under 18 U.S.C. sections 1956 and 1957 is subject to a five-year statute of limitations. 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). For the purpose of tolling the statute of limitations, an indictment is

"found" when it is returned by the grand jury and filed.  United States v. Srulowitz, 819 F.2d 37, 41 (2d Cir. 1987).  Consequently, and subject to limited exceptions, a sealed indictment is "found" on the date of return, even if it is not unsealed until after the applicable statute of limitations has expired.  Id. at 40.  No party here contests that the date of return was within the limitations period and the date of unsealing was outside it.

Sealed filing of an indictment will not, however, toll the running of the statute of limitations for the period of sealing, and the indictment will be "found" only upon unsealing if: (1) a defendant challenges the decision to seal an indictment following its unsealing, and the Government fails to carry its burden of establishing legitimate reasons for sealing in the first instance; or (2) a defendant alleges that the Government unreasonably delayed unsealing the indictment past the date on which the limitations period would have expired, and the Government fails to carry its burden of showing legitimate reasons for the delay in unsealing.  See id. at 40-41.  Sealing will also be insufficient to protect against the running of the statute of limitations if the defendant shows "substantial, irreparable, actual prejudice" arising from the decision to seal, and such prejudice occurs "during the period when the indictment was sealed, or perhaps only during the post-limitations portion of that period." United States v. Muse, 633 F.2d 1041, 1043 (2d Cir. 1980).

The Government's burden of establishing grounds for sealing is not a heavy one. The Second Circuit has held that "sealing in the first instance" is a "ministerial act," and there is "no need for the United States Attorney to do more in the first instance than to make the request that the indictment be sealed." Srulowitz, 819 F.2d at 41.  Once sealed, the indictment must then be unsealed "as soon as its legitimate need for delay has been satisfied." United States v. Watson, 599 F.2d 1149, 1154 (2d Cir. 1979), opinion amended on reh'g, 690 F.2d 15 (2d Cir.

1979), and modified on reh'g sub nom. Muse, 633 F.2d 1041.

As to the decision to seal in the first instance, the Government has established here that it had a legitimate basis for the sealing request—keeping the charges secret in order to enable it to effectuate the arrest of Mr. Nassimi. That purpose is enshrined in the criminal rules themselves. See Fed. R. Crim. P. 6(e)(4) ("The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.") (emphasis added). It is abundantly clear that, as other courts have noted, the "obvious" purpose of Rule 6(e)(4) is to prevent a circumstance in which public notice of the indictment enables the defendant to avoid arrest. See, e.g., United States v. Gigante, 436 F. Supp. 2d 647, 654 (S.D.N.Y. 2004). When it filed the Indictment, the Government knew that Mr. Nassimi was in Venezuela, a nation from which he could not be extradited, and its best hope was that he would either return to the United States or travel to another country where he could be arrested. The prospect of effectuating an arrest understandably rested on the secrecy of the Indictment and lack of notice to Mr. Nassimi. That Mr. Nassimi nonetheless appears to have learned of the Indictment despite the initial sealing does not make the decision to seal in the first instance unreasonable. Therefore, the Court finds that the Government's decision to seal the Indictment was proper, and no hearing or discovery is necessary to establish the relevant facts.

Nor was the Government's decision to delay unsealing the Indictment until June 2012 unreasonable. As explained above, even where the decision to seal is based on a legitimate need, the Government is obligated to unseal the Indictment "as soon as its legitimate need for delay has been satisfied." Watson, 599 F.2d at 1154. The Government proffers that it moved to

unseal the Indictment when it understood from speaking with Mr. Nassimi's defense counsel in February and March of 2012 that he was interested in surrendering. (See Gov't Opp. at 3-4, Exs. A-B.) Prior to those discussions, there was no reason to believe that the Government's basis for maintaining the secrecy of the Indictment was no longer sound. Indeed, between July 22, 2004, when the Indictment was filed under seal and a warrant for Mr. Nassimi's arrest was entered into the NCIC wanted persons database, and the time that Mr. Nassimi's defense counsel first contacted the Government to discuss a potential surrender of his client in February 2012, the Government had understandably made no progress in procuring Mr. Nassimi's arrest, as he remained outside its reach in Venezuela. Thus, until early 2012, the Government's legitimate interest in effectuating Mr. Nassimi's arrest continued to serve as a reasonable basis for maintaining the Indictment under seal. The Government moved to unseal the Indictment in June 2012 in anticipation of his arrest, as the "legitimate need" for secrecy had apparently "been satisfied."[2] Watson, 599 F.2d at 1154. Mr. Nassimi did not, however, surrender, nor did he do so in 2014, 2018, or 2022, when three different defense counsel purportedly expressed to the Government Mr. Nassimi's interest in turning himself in. Mr. Nassimi does not argue that he suffered prejudice by reason of the sealing or the period of time that elapsed before the Indictment was unsealed. (See id.)

    The Court finds that the Government's decision to seal in the first instance and its decision to maintain the Indictment under seal until June 2012, were in service of a legitimate

---

[2] The Government argues that Rule 6(e) can be construed as authorizing an indictment to remain under seal until a defendant has been arrested, meaning that the instant Indictment could have been properly maintained under seal to this day. See Gov't Opp. at 14; see also Fed. R. Crim. P. 6(e)(4) ("The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial."). As the Court finds that the Government's decision to maintain the Indictment under seal until June 2012 was reasonable, it need not, and does not, address that argument.

goal—effectuating Mr. Nassimi's arrest.  Therefore, the Government did not violate the statute of limitations for the money laundering offense, as the Indictment was "found" upon the date of return, July 22, 2004, which is well within the five-year limitations period.  18 U.S.C. § 3282(a).  No hearing or discovery is necessary to resolve any of the facts underlying this determination.

Speedy Trial Right Under the Sixth Amendment

Mr. Nassimi next argues that the Government violated his constitutional right to a speedy trial under the Sixth Amendment because 17 and one-half years have elapsed since the Indictment was returned.  The Sixth Amendment provides that a defendant "shall enjoy the right to a speedy . . . trial."  U.S. Const. amend. VI.  When determining whether this right has been violated, courts balance four factors identified by the Supreme Court in its Barker v. Wingo decision.  See 407 U.S. 514, 530 (1972).  These are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  See id.  A defendant bears "the burden at least to submit evidence that, if credited, would establish that the Barker factors weigh in his favor."  United States v. Stone, 510 F.Supp.2d 338, 343 (S.D.N.Y. 2007) (citing United States v. Lane, 561 F.2d 1075 (2d Cir. 1977)).

The first factor is a threshold inquiry, in that the Court will consider the other Barker factors only when the defendant makes a showing that the interval between accusation and trial has become a "presumptively prejudicial" delay.  United States v. Ghailani, 733 F.3d 29, 43 (2d Cir. 2013) (quoting Doggett v. United States, 505 U.S. 647, 652 (1992)).  Once the remaining inquiries are triggered, "no one factor is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  United States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015).  In fact, delay alone, "no matter how lengthy," cannot "carry a Sixth Amendment claim without regard to the other Barker criteria."  United States v. Cabral, 979 F.3d 150, 157

(2d Cir. 2020).  Where a "reasonable explanation for the delay" exists, "its negative implications will be vitiated."  Garcia Montalvo v. United States, 862 F.2d 425, 426 (2d Cir. 1988).  Finally, where the Government has "pursue[d] a defendant with reasonable diligence, the Sixth Amendment claim fails however great the delay unless the defendant can show specific prejudice to his defense."  Cabral, 979 F.3d at 163.  If the Sixth Amendment right is violated, dismissal with prejudice is "the only possible remedy."  Barker, 407 U.S. at 522.

As to the first factor, the parties disagree as to whether the clock for the purposes of the speedy trial analysis begins to run when the Indictment was returned or when it was unsealed.  The Government notes correctly that, in this Circuit, the length of delay for purposes of the Sixth Amendment is measured from the date when an indictment is unsealed.  See, e.g., United States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015); Watson, 599 F.2d at 1156.  In any event, however, the Government concedes that even the shorter period of approximately eleven years (as opposed to more than seventeen years, if counting from the date of return) between unsealing and today, is "sufficient to trigger further inquiry."  (See Gov't Opp. At 18.)  The Court finds, however, that Mr. Nassimi has failed to meet his burden with respect to the remaining Barker factors.  Indeed, in his motion to dismiss the Indictment, Mr. Nassimi neglects to address any Barker factor other than the first and appears to suggest, in contravention of the legal authorities discussed above, that the delay alone can demonstrate a Sixth Amendment violation.  That argument is necessarily unavailing.

The second factor—the reason for the delay—is often "critical."  Cabral, 979 F.3d at 158 (citing Moreno, 789 F.3d at 79).  Indeed, courts have rarely found a violation where the "delay is attributable entirely to the defendant" or to a "legitimate government" purpose such as trying to locate a defendant who is in hiding.  Cabral, 979 F.3d at 158.  As explained above,

where the Government has pursued a defendant with "reasonable diligence," there is no Sixth Amendment violation no matter how lengthy the delay, unless the defendant can show specific prejudice—the fourth Barker factor.  Id. at 163.  Mr. Nassimi has not challenged the Government's proffers concerning its diligent efforts throughout the period of sealing and thereafter to procure Mr. Nassimi's arrest or surrender.  As the Second Circuit has emphasized, "law enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown."  Cabral, 979 F.3d at 161 (quoting Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir. 1988)).  When, as here, the defendant has remained in a jurisdiction that will not extradite him, and the Government has been reasonably diligent in its efforts to apprehend him, the reason for the delay is appropriately attributed to the defendant.  Cabral, 979 F.3d at 158-161 (attributing delay to the defendant where he had fled to Brazil, and the Government had entered his information into the NCIC wanted persons database).

        Turning to the third factor – the defendant's assertion of his speedy trial right – the Court finds nothing in the record that weighs in favor of Mr. Nassimi.  Since the Indictment was unsealed in June 2012, Mr. Nassimi has made no serious efforts to face the charges against him, and he proffers no reasons for his continuing delay in facing those charges.  The Sixth Amendment right to a speedy trial "should not operate to reward a recalcitrant and reluctant defendant."  United States v. Schreiber, 535 F. Supp. 1359, 1363 (S.D.N.Y. 1982).  Mr. Nassimi's lack of any serious interest in the speedy prosecution of the charges against him "weighs heavily against his Sixth Amendment claim."  United States v. Perez-Cestero, 737 F. Supp. 752, 766 (S.D.N.Y. 1990) (rejecting speedy trial claim as to eight-and-a-half-year delay while defendant was a fugitive in Venezuela).  Indeed, much like the defendant in Cabral, Mr.

Nassimi has "no one to blame" for the delay "other than himself." Cabral, 979 F.3d at 160.

Because the delay was attributable to Mr. Nassimi, and the Government exercised reasonable diligence in pursuing him, Mr. Nassimi's speedy trial claim fails unless he can show prejudice. Cabral, 979 F.3d at 163. As referenced above, Mr. Nassimi does not address any Barker factor but the first, and so he has chosen not to address whether he has suffered prejudice from the delay. That ends the Barker inquiry, as the burden to show prejudice is Mr. Nassimi's alone. Therefore, the Court finds that the Government has not violated Mr. Nassimi's constitutional speedy trial right, and his Sixth Amendment claim must fail.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the indictment is denied in its entirety. The Memorandum Order resolves docket entry no. 4.

SO ORDERED.

Dated: New York, New York
       May 22, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge